IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LOIS CHANEY,

          Plaintiff,

v.                                                                              CIVIL ACTION NO.   3:19-0519

TRI STATE FOOD SYSTEMS, INC.
d/b/a WAYNE KFC

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Tri State Food Systems, Inc. d/b/a Wayne KFC's Motion for Summary Judgment. ECF No. 28. For the following reasons, the Court **DENIES** the motion.

Plaintiff Lois Chaney filed this action in the Circuit Court of Wayne County, West Virginia on June 25, 2019, and Defendant timely removed the action to this Court based upon diversity jurisdiction. 28 U.S.C. §§ 1332, 1441, and 1446. In her Complaint, Plaintiff alleges that during her employment she was subjected to sexual harassment and a hostile work environment (Count I), disability discrimination (Count II), and retaliatory discharge in violation of the West Virginia Human Rights Act (Count III). With discovery complete, Defendant moves for summary judgment on all claims.

The parties agree that Plaintiff was hired to work as a cashier at the Wayne KFC on November 26, 2016. Plaintiff states that, when she was hired, she informed the General Manager,

Brenda Fields, that she was dyslexic. *Dep. of Lois Chaney*, at 37 (Mar. 9, 2020), ECF No. 30-2. During Ms. Field's deposition, she acknowledged that she was aware Plaintiff had dyslexia. *Dep. of Brenda Fields*, at 10-11 (May 29, 2020), ECF No. 30-1. Plaintiff explained that her dyslexia made it difficult for her to read and sometimes she struggled to find things on the register. *Dep. of Chaney*, at 40, 123. Plaintiff said that Ms. Fields and two other supervisors, Lemmie Adkins and Destiny Payne, would laugh, make fun of her, call her names, and make her "look like an idiot in front of customers." *Id*. at 123. Plaintiff further said Mr. Adkins called her fat, lazy, stupid, dumb, and retarded, and he said he did not want to work with her because she asked questions about words she could not read and how to find things on the register. *Id.*, at 46-47, 104, 123-24. Plaintiff asserts she reported Mr. Adkins' conduct to Ms. Fields "numerous times" and Ms. Fields said she would talk to him about his behavior. *Id*. at 47.

Plaintiff also said she reported the incidents to another supervisor, Jessica Peterman. *Id*. at 48-49. In an Affidavit filed by Ms. Peterman, she said she worked as a shift manager for Defendant, and she was aware at the time Plaintiff had dyslexia and diabetes. *Aff. of Jessica Peterman*, at 1 (Mar. 13, 2020), ECF No. 30-3. She also said Mr. Adkins and Ms. Payne were aware of these diagnoses, and she often observed them call Plaintiff "'dumbass,' 'retard,' 'stupid,' and 'moron.'" *Id*. Ms. Peterman states that not only did she report their behavior to Ms. Fields, but she also reported it to Ms. Fields' supervisor, the Area Manager, Tonya Hicks. Ms. Peterman said the name calling did not stop after she reported it and, in fact, she said Ms. Fields herself called Plaintiff "names, such as 'stupid,' 'retard,' 'moron,' and 'dumbass.'" *Id*.

-2-

In Plaintiff's deposition, she also stated that, while she worked for Defendant, Ms. Payne, who was one of her supervisors, was "constantly wanting me to have a three or foursome with her and her boyfriend and another one or two other employees." *Dep. of Chaney*, at 50. Plaintiff said that Ms. Payne asked her to participate in sexual acts about every five days they worked together, but Plaintiff refused. *Id*. at 50-51. Plaintiff further stated Ms. Payne tried to convince her to leave her husband for another employee. Plaintiff said she reported these conversations to Ms. Fields every time they happened, and Ms. Fields just laughed. *Id*. at 51-52. Plaintiff claims that "everybody," including Ms. Peterman, knew about Ms. Payne's advances because she had similar conversations with other employees. *Id*. at 52. In her Affidavit, Ms. Fields denies that Plaintiff ever reported any harassment to her. *Aff. of Brenda Fields* (June 5, 2020), ECF No. 28-2. She also claims that she was not involved in the decision to terminate Plaintiff. *Id*.

Plaintiff asserts she phoned Arguest Knipp, Defendant's human resource manager, on December 4, 2017, and reported the name calling and Ms. Payne's sexual advances. *Dep. of Chaney*, 101-02, 104. She also said she reported to him that she thought Ms. Fields was dealing drugs through the drive-through window and needles were found in the store. *Id*. at 101-04. Plaintiff specially recalled asking Arguest Knipp if she could be fired for calling him, and he told her no. *Id*. at 102, 104.

Two days later, on December 6, 2017, Plaintiff forgot her purse at work. Inside her purse, she had two pieces of cheesecake. The next day, Ms. Payne saw Plaintiff's purse with the cheesecakes. As employees were not permitted to take food without paying for it, Ms. Payne reported her finding to the Area Manager, Ms. Hicks. When Plaintiff arrived at work that day, Ms.

Hicks and Defendant's President Doug Knipp, who is Arguest Knipp's brother, asked to speak to her and another employee. *Id*. at 82. Reportedly, the purpose of the conversation was to ask them to say something nice about Ms. Fields, who was receiving an award. *Id*. at 82-82. During the conversation, however, the cheesecakes also were discussed. *Id*. at 83. Plaintiff and Doug Knipp give different versions of what was said. Later that same day, Ms. Fields informed Plaintiff that she was suspended. On December 13, 2017, Arguest Knipp called Plaintiff and told her she was fired for theft and dishonesty. *Id*. at 97; *Aff. of Arguest Knipp*, at 2 (June 5, 2020), ECF No. 28-3. Arguest Knipp states that he was the sole decisionmaker, was unaware of Plaintiff's dyslexia and diabetes, and Plaintiff never reported any harassment to him. *Aff. of Arguest Knipp*, at 2.

In her deposition, Plaintiff said that she purchased the cheesecake on December 6 around 4:45 p.m. because her sugar had dropped. *Dep. of Chaney*, at 80. As there is no button for cheesecake on the register, Plaintiff said she rang the purchase up as a side. *Id.* at 81. She thought it was either rung up as potato salad or coleslaw. *Id*. Plaintiff further contends that the price for two cheesecakes was $7.98, and Defendant's transaction record shows she rang up an *a la carte* sale of potato salad for that amount at 4:50 p.m. In her Affidavit, Ms. Peterman also said that she told "Mr. Knipp" she knew Plaintiff had purchased the cheesecakes because she was standing behind her when she rang them up on her register. *Aff. of Peterman*, at 1.[1]

---

[1] Although not specifically identified in her Affidavit, it appears that Ms. Peterman is referring to Arguest Knipp. Ms. Peterman said that, after she told Mr. Knipp what she witnessed, he fired her. *Id*. Ms. Peterman was in the hospital when she was fired, having just suffered a miscarriage. Ms. Peterman stated she filed a pregnancy discrimination administrative action against Defendant which was resolved.

-4-

Plaintiff also denies telling Doug Knipp that she got the cheesecakes between 8 and 8:30 p.m. and took them home, but she forgot to pay for them. *Aff. of Chaney*, at 83-84. Plaintiff contends Doug Knipp's statement is a lie because she told him she paid for the items, and she obviously did not take them home. *Id*. at 85. In addition, Plaintiff denies making statements to Arguest Knipp that she rang up the cheesecake after 7 p.m. right before they started to shut down the buffet. *Id*. at 94.

In support of its motion, Defendant offered an Affidavit by Ms. Hicks. In her Affidavit, Ms. Hicks said she looked at the register transactions for December 6 and only found one *a la carte* side recorded, which occurred at 4:50 p.m. *Aff. of Tonya Hicks*, at 1 (June 5, 2020), ECF No. 28-4. However, she claims that she investigated and determined the identity of the customer who made the purchase. *Id*. In response to this claim, Plaintiff asserts that, in the nearly two and one-half years since the event, it is the first time Defendant has ever disclosed someone else was identified as buying the cheesecakes. Plaintiff complains that Defendant has failed to provide any information about who the purported customer is or provide any documentation corroborating Ms. Hick's statement.

To obtain summary judgment in this action, Defendant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering its motion, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to Plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to Plaintiff, she nonetheless must offer some "concrete evidence" from which a reasonable trier of fact can return a verdict in her favor. *Anderson*, 477 U.S. at 256. As Defendant has moved for summary judgment, Plaintiff must show more than a mere "scintilla of evidence" in support of her position. *Id.* at 252.

Defendant in this matter argues Plaintiff has not met her burden on any of her claims. However, the Court must draw any permissible inference in her favor. Although Defendant insists Plaintiff's own self-serving statements are not enough to survive summary judgment, Plaintiff also has offered Ms. Peterman's Affidavit and other evidence suggesting Defendant knew she actually had purchased the cheesecake when she was fired. Additionally, Ms. Peterman said she had reported Mr. Adkins, Ms. Payne, and Ms. Fields' inappropriate actions to Ms. Hicks, but nothing was done to stop it. Shortly after Plaintiff said she called Arguest Knipp to report what was occurring, he fired her. Given this evidence in the light most favorable to Plaintiff, the Court finds there are genuine issues of material fact at issue. As this case is set for a bench trial, the Court will decide whether Plaintiff's has sufficiently established the elements of each claim after a full presentation of the evidence. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment. ECF No. 29.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: July 23, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE